UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

SHLAWRENCE ROSS,

       Plaintiff,

    v.

KYLE GRAF, et al.,

       Defendants.

No. 19-cv-20534 (NLH) (MJS)

OPINION

APPEARANCE:

SHLAWRENCE ROSS
4340222
Camden County Jail
330 Federal St.
Camden, NJ 08103

    Plaintiff Pro se

HILLMAN, District Judge

    Plaintiff Shlawrence Ross, a pretrial detainee at Camden County Jail in Camden, New Jersey, seeks to bring this civil action pursuant to 42 U.S.C. § 1983.  At this time, the Court must review the Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B) to determine whether the Court should dismiss it as frivolous or malicious, for failure to state a claim upon which the Court may grant relief, or because it seeks monetary relief from a defendant who is immune from such relief.  For the reasons set forth below, the Court determines, with the following caveats, that dismissal of the entire Complaint is not warranted at this time.

I.   BACKGROUND

The Court will construe the factual allegations of the Complaint as true for the purpose of this Opinion.  This case arises from police officers' shooting of Plaintiff as they effectuated his arrest after he was involved in an altercation and shooting at a speakeasy.  (ECF No 1, at 5–6.)  Plaintiff names Officers Kyle Graf, Matthew Kriedler, Joseph Pemberton, and Lance Smith; Detectives Jim Pisano, Lawrence Carter, and Marty Farrell; Attorney Dan Rybeck; the Camden County Police Department; and the City of Camden as defendants in this matter.  (Id. at 1–2.)

On December 3, 2017, Plaintiff was at a speakeasy in Camden, New Jersey.  (ECF No. 1, at 10.)  While at the speakeasy, Plaintiff got into a scuffle with an unknown assailant.  (Id.)  During the scuffle, the assailant produced a handgun and shot the plaintiff twice in the hip.  (Id. at 10–11.)  The other patrons of the speakeasy fled.  (Id. at 11.)

Several police officers approached the scene with their weapons drawn, but Plaintiff did not know at the time that they were officers.  (See id. at 11–12.)  The officers screamed simultaneously at Plaintiff, which made it impossible to understand what any of them were saying.  (Id. at 11.)

At that point, the assailant who shot Plaintiff fled, and officers began shooting at Plaintiff.  (Id.)  Plaintiff, fearing for his life, ran from the officers towards his car, but a bullet

struck the back of his arm.  (Id.)  When Plaintiff made it to his car, he became lightheaded from blood loss and fell to the ground. (Id.)  The police officers handcuffed him and transported him to Cooper Hospital.  (Id. at 12.)

According to Plaintiff, Officers Graf, Kriedler, and Pemberton concocted a bogus story to cover up the alleged unjust shooting of Plaintiff.  (Id.)  The officers caused prosecutors to lodge fabricated attempted murder and weapons charges against Plaintiff.  (Id.)

After the shooting, the Camden County Prosecutors' Office called upon Defendants Pisano, Carter, and Farrell to investigate the crime.  (Id. at 13.)  These detectives allegedly failed to pursue the officers who fired upon Plaintiff because they were their colleagues.  (Id. at 14.)

Plaintiff alleges that the City failed to properly train the officers.  (See Id. at 14–15.)  Specifically, Plaintiff alleges that Officers Graf, Kriedler, and Pemberton were "extremely gung ho" and lacked specialized training to handle the situation.  (See Id.)

Plaintiff also alleges that the City instituted a policy that allows officers to cover up their misdeeds by allowing officers to view their body cameras before making formal statements.  (Id. at 15.)  In this way, Plaintiff alleges, the officers "can get their stories straight."  (Id.)

II.  <u>STANDARD OF REVIEW</u>

Section 1915(e)(2) requires a court to review complaints prior to service in cases in which a plaintiff is proceeding <u>in forma pauperis</u>.  A court must <u>sua sponte</u> dismiss any claim that is frivolous, is malicious, fails to state a claim upon which the court may grant relief, or seeks monetary relief from a defendant who is immune from such relief.  This Court must screen this action for dismissal under 28 U.S.C. § 1915(e)(2)(B) because Plaintiff is proceeding <u>in forma pauperis</u> and is incarcerated.

To survive <u>sua sponte</u> screening for failure to state a claim, the complaint must allege "sufficient factual matter" to show that the claim is facially plausible.  <u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 210 (3d Cir. 2009).  "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  <u>Fair Wind Sailing, Inc. v. Dempster</u>, 764 F.3d 303, 308 n.3 (3d Cir. 2014) (quoting <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009)).  "[A] pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  <u>Iqbal</u>, 556 U.S. at 678 (quoting <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007)).

III. <u>DISCUSSION</u>

Plaintiff brings this action pursuant to 42 U.S.C. § 1983. (<u>See</u> ECF No. 1, at 3.)  To state a claim for relief under Section

4

1983, a plaintiff must allege, first, the violation of a right under the Constitution or laws of the United States and, second, that the person acting under color of state law committed or caused the alleged deprivation. West v. Atkins, 487 U.S. 42, 48 (1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994). The Court liberally construes the Complaint as setting forth the following claims: (1) Fourth Amendment excessive force claims against Defendants Graf, Kriedler, Pemberton, and Smith;(2) Section 1983 conspiracy claims against Defendants Graf, Kriedler, Pemberton, Smith, Pisano, Carter, Farrell, and Rybeck; and (3) Monell liability claims against the Camden County Police Department and the City of Camden.[1]

A. Excessive Force Claims

Plaintiff first claims that Officers Graf, Kriedler, Pemberton, and Smith used excessive force in effectuating his arrest by shooting him in the back of the arm. "[C]laims that law enforcement officers have used excessive force . . . in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its

---

[1] Plaintiff notes in the Complaint that he "will be moving to amend this action . . . to add malicious prosecution claims" against Defendants Pisano, Carter, Farrell, but he is "awaiting the favorable termination of the criminal charges that are currently pending against him . . . ." Thus, the Court does not construe the Complaint as asserting malicious prosecution claims at this time.

'reasonableness' standard . . . ." <u>Graham v. Connor</u>, 490 U.S. 386, 395 (1989). "To state a claim for excessive force as an unreasonable seizure under the Fourth Amendment, a plaintiff must show that a 'seizure' occurred and that it was unreasonable." <u>Kopec v. Tate</u>, 361 F.3d 772, 776 (3d Cir. 2004).

The test for unreasonableness under the Fourth Amendment is whether, under the totality of the circumstances, "the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivations." <u>Graham</u>, 490 U.S. at 397. "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." <u>Id.</u> Factors to consider in determining the reasonableness of the officer's force include the severity of the crime, whether the suspect poses an immediate threat to the safety of officers or others, and whether the suspect is actively resisting arrest or trying to flee the scene. <u>Id.</u> at 396.

The Court has reviewed Plaintiff's excessive force claims and declines to dismiss them prior to a responsive pleading. The Complaint alleges sufficient facts for the Court to infer that the officers' conduct was unreasonable under the totality of the circumstances. In particular, the Complaint alleges that Plaintiff was not brandishing a weapon, actively resisting arrest,

or fleeing the scene before officers began shooting at him.  (See ECF No. 1, at 5-7.)  Although officers "were screaming" before they opened fire, nothing in the Complaint indicates that Plaintiff disobeyed their orders.  (See id.)  Finally, the Complaint alleges that officers fired "over 50 shots" at Plaintiff while he was fleeing, which seems excessive given that, as alleged, Plaintiff did not appear to be a threat to the officers or others.  (Id. at 14.) Accordingly, the Court will permit the excessive force claims to proceed past this initial screening.

B. Conspiracy Claims

Next, Plaintiff alleges that the Defendants conspired against him to conceal the alleged unjust shooting.  "To prevail on a conspiracy claim under § 1983, a plaintiff must prove that persons acting under color of state law 'reached an understanding' to deprive him of his constitutional rights." Jutrowski v. Twp. of Riverdale, 904 F.3d 280, 294 (3d Cir. 2018).  In addition, a plaintiff "must provide some factual basis to support the existence of the elements of a conspiracy: agreement and concerted action." Id. at 295.

"A general allegation of conspiracy without a statement of the facts is an allegation of a legal conclusion and insufficient of itself to constitute a cause of action."  Loftus v. S.E. Pa. Transp. Auth., 843 F. Supp. 981, 986 n.8 (E.D. Pa. 1994).  "[O]nly allegations which are particularized, such as those addressing the

period of the conspiracy, the object of the conspiracy, and actions taken in furtherance of the conspiracy, will be deemed sufficient." Grigsby v. Kane, 250 F. Supp. 2d 453, 458 (M.D. Pa. 2003) (holding that plaintiff must allege the period, object, and acts taken in furtherance of a conspiracy to defeat a motion to dismiss).

Although Plaintiff broadly alleges that Defendants "conspired" and "worked [together]" to violate his constitutional rights, the Complaint does not allege an agreement between the Defendants, nor does it provide any particularized factual support of an agreement or concerted action. (See ECF No. 1, at 7–8.) For example, it does not articulate how, where, or when the Defendants entered into an agreement, does not allege the period of the conspiracy, and only broadly speculates as to why Defendants may have cooperated. (See id.) Accordingly, the Complaint fails to state a Section 1983 conspiracy, and the Court will dismiss the conspiracy claims without prejudice. See, e.g., Gross-Quatrone v. Mizdol, 811 F. App'x 95, 100 (3d Cir. 2020).

C. Municipal Liability Claims

Finally, Plaintiff alleges that the City of Camden and the Camden County Police Department failed to train its officers regarding the proper use of firearms and instituted a policy that allowed its officers to violate Plaintiff's civil rights by allowing them to review body camera footage before making a formal statement. For the reasons below, the Court will dismiss

Plaintiff's claims against the Camden County Police Department and Plaintiff's Monell claim against the City of Camden based on its alleged policy regarding body cameras, but the Court will allow Plaintiff's failure-to-train claim against the City of Camden to proceed.

As an initial matter, the Camden County Police Department is not a proper defendant in this Section 1983 action. "In New Jersey, a municipal police department is not an entity separate from the municipality." Alexander v. Borough of Pine Hill, No. 17-6418, 2020 U.S. Dist. LEXIS 215661, at *32 (D.N.J. Nov. 18, 2020). Further, "[i]n Section 1983 actions, police departments cannot be sued in conjunction with municipalities, because the police department is merely an administrative arm of the local municipality, and is not a separate judicial entity." Padilla v. Twp. of Cherry Hill, 110 F. App'x 272, 278 (3d Cir. 2004). Accordingly, the Court will dismiss Plaintiff's claims against the Camden County Police Department with prejudice[2] for failure to state a claim.

Plaintiff, however, sufficiently states a claim against the City of Camden, subject to the caveats below. A plaintiff may sue a local government under § 1983 only for acts implementing an

---

[2] The dismissal is with prejudice because any attempt to amend the Complaint against the Police Department would be futile. See Edwards v. Lindenwold Police Department, No. 21-13076, 2021 WL 3115809, at *4 (D.N.J. July 22, 2021).

official policy, practice, or custom.  See Monell v. New York City
Dep't of Social Servs., 436 U.S. 658, 690-91 (1978).  To plausibly
plead Monell liability, a plaintiff must identify the challenged
policy or custom, attribute it to the municipality itself, and
show a causal link between execution of the policy and the injury
suffered.  Harley v. City of New Jersey City, No. 16-5135, 2017 WL
2774966, at *7-8 (D.N.J. June 27, 2017).

Where the identified policy "concerns a failure to train or
supervise municipal employees, liability under Section 1983
requires a showing that the failure amounts to 'deliberate
indifference' to the rights of persons with whom those employees
will come into contact."  Thomas v. Cumberland County, 749 F.3d
217, 222 (3d Cir. 2014).  "Additionally, 'the identified deficiency
in a city's training program must be closely related to the
ultimate injury;' or in other words, 'the deficiency in training
[must have] actually caused' the constitutional violation."  Id.

Deliberate indifference is a "stringent standard of fault,
requiring proof that a municipal actor disregarded a known or
obvious consequence of his action."  Id. at 223.  Ordinarily, "[a]
pattern of similar constitutional violations by untrained
employees" is necessary "to demonstrate deliberate indifference
for purposes of failure to train."  Id.

However, the Supreme Court has stated that, in certain
situations, the need for training "can be said to be 'so obvious,'

10

that failure to do so could properly be characterized as 'deliberate indifference' to constitutional rights" even without a pattern of constitutional violations.  See City of Canton v. Harris, 489 U.S. 378, 390 (1989).  In particular, the Supreme Court has stated that "the need to train officers in the constitutional limitations on the use of deadly force . . . can be said to be 'so obvious,' that failure to do so could properly be characterized as 'deliberate indifference' to constitutional rights."  Id. at 390 n.10.

The Court has reviewed Plaintiff's Monell claim against the City of Camden based on its alleged failure to provide "specialized training" regarding the use of firearms and declines to dismiss it prior to a responsive pleading.  However, the Court will dismiss without prejudice Plaintiff's Monell claim against the City of Camden for allegedly instituting a policy that allows officers to review body camera footage prior to making a formal statement.

 With respect to the latter claim, Plaintiff alleges that the City of Camden "instituted a policy in which [the City] allow[s] the officers, who were involved in a shooting, to view their body cameras before making a formal statement, so that they can get their stories straight."  (ECF No. 1, at 15.)  This claim fails because Plaintiff does not allege a causal connection between this policy and his alleged injuries.  See Harley, 2017 WL 2774966, at *7-8.  For example, Plaintiff fails to allege that the officers

11

involved in this incident actually viewed their body camera footage before making a formal statement or even if they had how reviewing the footage caused a violation of his constitutional rights.  (See generally ECF No. 1.)   Accordingly, Plaintiff's allegations regarding this policy fail to state a claim upon which the Court may grant relief.

IV.   CONCLUSION

For the reasons stated above, the Court will dismiss without prejudice the conspiracy claims against all Defendants and the Monell claim against the City of Camden based on the alleged policy that allows officers to review body camera footage before making a statement.[3]  The Court will also dismiss with prejudice the Monell claims against the Camden County Police Department. However, the Court will allow Plaintiff's excessive force claims against Officers Graf, Kriedler, Pemberton, and Smith and Monell claim against the City of Camden based on alleged failure to train to proceed.  An appropriate order follows.


Dated:  September 28, 2021              s/ Noel L. Hillman
At Camden, New Jersey            NOEL L. HILLMAN, U.S.D.J.


---

[3] To the extent Plaintiff can provide facts curing the pleading deficiencies noted above, he may do so by filing an amended complaint consistent with Fed. R. Civ. P. 15.